UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW ACHAL,<br><br>                    Plaintiff,<br><br>        v.<br><br>GATE GOURMET, INC.,<br><br>                    Defendant. | Case No.  15-cv-01570-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

## I.     INTRODUCTION

Plaintiff Andrew Achal, a former employee of Gate Gourmet, filed his First Amended Complaint in federal court against Defendants Gate Gourmet, Inc. ("Gate Gourmet") and Does 1−100, inclusive.  Achal alleges various violations of the California Fair Employment and Housing Act ("FEHA") and California Labor Code violations actionable under the California Private Attorneys General Act ("PAGA").  Gate Gourmet now moves to dismiss Achal's First Amended Complaint in its entirety, including Achal's requests for punitive damages, and injunctive and declaratory relief.  The Court held a hearing on July 10, 2015.  For the reasons stated below, the Court finds that Achal may proceed on all of his claims, but dismisses Achal's requests for punitive damages and injunctive and declaratory relief with leave to amend.  The Court also dismisses Claim Seven to the extent that it relies on an alleged violation of California Labor Code section 226(a)(6).[1]

## II.     BACKGROUND

### A.     Complaint

Achal's First Amended Complaint ("FAC" or "Complaint") alleges that several months

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court<br>Northern District of California

after beginning work with Gate Gourmet, Achal experienced religious and disability discrimination, which culminated in his termination.  It also alleges that Gate Gourmet failed to furnish and maintain accurate wage statements as required by California Labor Code section 226(a).  The Complaint focuses on the following incidents.

First, Achal alleges that his supervisor "began to retaliate" against him in April 2014, after he returned to work from his home country of Fiji to attend a Hindu funeral and religious observance. FAC ¶ 8.  The FAC recounts in particular the comments made by Achal's supervisor regarding his return from Fiji, specifically that "it's about time you returned" and that it was "ridiculous for a religious ceremony to take so long." *Id.* at ¶ 8.  It further alleges that following Achal's return, his supervisor began subjecting him to unfavorable scheduling, unreasonable work demands, and set him up for failure on one particular project.  *Id.* at ¶ 9.

Second, Achal claims that the reason given by Gate Gourmet for terminating him—that he fraudulently sought benefits by causing his own disability—is both false and pretextual.  *Id.* at ¶¶ 12−13.  The Complaint describes how Achal fell from a platform at work, sustaining injuries that caused him to be off work for several weeks and to require ongoing medical care.  *Id.* at ¶ 10. According to the Complaint, Gate Gourmet completed a worker's compensation claim for Achal, who returned to work with lifting and bending restrictions, but who was otherwise capable of performing his essential job functions with reasonable accommodations for those restrictions.  *Id.* at ¶¶ 11−12.  Achal alleges that instead of making reasonable accommodations for his injury and/or engaging him in the interactive process, Gate Gourmet terminated him.  *Id.* at ¶ 12. According to the Complaint, Gate Gourmet issued a letter on October 10, 2014, which stated that it was terminating Achal for intentionally causing his disability.  *Id.* at ¶ 13.  Achal maintains that this assertion is false, and that Gate Gourmet had no basis for making this conclusion.  *Id.*

In response to his termination, Achal filed an administrative complaint ("DFEH Complaint") with the California Department of Fair Employment and Housing ("DFEH") on February 9, 2015.[2]  *Id.* at ¶ 15.  In the DFEH Complaint, Achal alleged that Gate Gourmet had

_____

[2] Both the DFEH Complaint and the right to sue letter are included as Exhibit A to the FAC.  Both are thereby considered part of the FAC. Fed. R. Civ. P. 10(c) ("A copy of a written instrument

United States District Court
Northern District of California

committed several FEHA violations on the basis of his disability and religion.[3]  DFEH Complaint

(FAC Ex. A). He then described the basis for his claims as follows:

> Complainant Achal was discriminated against and retaliated against for taking time off from work to attend a religious observance (Hindu) in his home country of Fiji. His supervisor stated words to the effect that it was "about time" he returned and questioned the purpose of a religious ceremony connected to a funeral.  On June 10, 2014, Complainant Achal fell and injured himself, causing him to become disabled and to be placed on disability leave by his doctor. Respondent failed to reasonable [sic] accommodate this disability and failed to engage in the interactive process. Respondent terminated Complainant Achal on October 6, 2014, based on actual and perceived disability and because he engaged in religious practice and observance. Respondent failed to prevent the discrimination and retaliation.

*Id.*  Because Achal requested an immediate right to sue letter, DFEH did not pursue an

investigation into the allegations, and issued Achal a right to sue letter that same day, February 9,

2015.  FAC ¶ 15; DFEH Complaint (FAC Ex. A).

Third, Achal claims that Gate Gourmet failed to maintain and failed to furnish Gate

Gourmet employees, himself included, with accurate itemized wage statements.  *Id.* at ¶ 16.  The

Complaint describes how on at least some of its wage statements, Gate Gourmet failed to report

only the last four digits of employees' social security numbers, failed to include the inclusive dates

for the period for which employees are paid, or failed to set forth the address of the corporate

employer.  *Id.*  On December 31, 2014, and on January 26, 2015, Achal notified the California

Labor and Workforce Development Agency ("LWDA") and Gate Gourmet of Gate Gourmet's

alleged violations of the state Labor Code.[4]  *Id.* at ¶ 24.

Based on these core factual allegations, Achal brings seven claims for relief.  Claims One

through Five allege disability discrimination, failure to accommodate, failure to engage in the

interactive process, religious discrimination, and failure to prevent discrimination, under the

---

that is an exhibit to a pleading is a part of the pleading for all purposes.").
[3] "Discrimination, Retaliation [sic] Denied a good faith interactive process, Denied a work environment free of discrimination and/or retaliation, Denied reasonable accommodation, Terminated, Other, Denied religious accommodation for religious belief and observance."  DFEH Complaint (FAC Ex. A).
[4] The wage statements at issue and the LWDA letters are included as Exhibits B and C to the FAC.  Both exhibits are considered part of the FAC.  Fed. R. Civ. P. 10(c).

United States District Court
Northern District of California

California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code §§ 12940(a), (m), (n), (l), (k). FAC ¶¶ 25−54. Claims Six and Seven allege failure to furnish accurate wage statements and failure to maintain accurate wage statements under the California Labor Code Private Attorney General Act ("PAGA"), which allows aggrieved employees to seek civil penalties for actions taken by employers in violation of specified provisions of the California Labor Code. FAC ¶¶ 55−64.

**B.    Procedural History**

Achal initially filed this action in the California Superior Court for the County of San Francisco on March 9, 2015. *See* Notice of Removal (dkt. 1). Defendant Gate Gourmet removed this action to this Court on April 6, 2015. *Id.* On April 13, 2015, Gate Gourmet filed an initial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). *See* First Motion to Dismiss (dkt. 8). Achal filed his First Amended Complaint on April 20, 2014. *See* FAC. The Court denied as moot Gate Gourmet's initial Motion to Dismiss on April 22, 2015. *See* Order (dkt. 13). On May 4, 2015, Gate Gourmet filed the present Motion to Dismiss Achal's First Amended Complaint, and to dismiss Achal's requests for punitive damages, and injunctive and declaratory relief. *See* Second Motion to Dismiss ("Mot.") (dkt. 14).

**C.    Parties' Arguments**

**1.    California Fair Employment and Housing Act Claims**

Gate Gourmet moves to dismiss Achal's FEHA claims (Claims 1−5) with prejudice on the basis of two purported deficiencies. Mot. at 1.

First, Gate Gourmet argues that Claims One through Five should be dismissed because Achal fails to properly plead administrative exhaustion under FEHA. Mot. at 2. Gate Gourmet does not dispute that Achal filed an administrative complaint with the DFEH, nor does it dispute that Achal obtained a right to sue letter from DFEH. Rather, Gate Gourmet argues that Achal's DFEH Complaint is insufficiently specific in its allegations, and therefore fails to satisfy the exhaustion requirement. Mot. at 5. Because the timely filing of a DFEH complaint is a jurisdictional prerequisite to the bringing of a civil action for damages under FEHA, Gate Gourmet maintains that this Court should dismiss these claims. *Id.* In response, Achal argues that

1  FEHA does not require "literary exactitude" in the allegations set forth in administrative

2  complaints, and that Gate Gourmet's position relies on a misreading of the case law, FEHA, and

3  its legislative intent. Opp'n at 4−6 (citing *Soldinger v. Nw. Airlines*, 51 Cal. App. 4th 345,

4  381(1996)). Specifically, because courts are to liberally construe DFEH administrative complaints

5  to ensure vindication of employees' FEHA rights, Achal maintains that the information contained

6  in the DFEH Complaint suffices to satisfy the exhaustion requirement. *Id.* (citing 2 Cal. Code

7  Regs. § 10003).

8        Second, Gate Gourmet argues that Claims One through Five should be dismissed because

9  Achal has failed to allege sufficient facts in support of his FEHA claims to satisfy the pleading

10  standard of Federal Rule of Civil Procedure 8(a). Mot. at 2 (citing *Bell Atl. Corp. v. Twombly*, 550

11  U.S. 544, 555 (2007)). In particular, Gate Gourmet contends that Achal fails to allege sufficient

12  facts supporting the elements of his claims. *Id.* Achal asserts that the allegations pleaded in his

13  FAC satisfy the liberal notice pleading requirements of Rule 8(a) and therefore should not be

14  dismissed. Opp'n at 6−13.

### 2.  California Private Attorneys General Act Claims

16        Gate Gourmet moves to dismiss Achal's PAGA claims (Claims 6−7) with prejudice on the

17  basis of two purported deficiencies. Mot. at 1.

18        First, Gate Gourmet argues that Claims Six through Seven should be dismissed because

19  Achal has failed to plead them in compliance with Federal Rule of Civil Procedure 23, which

20  governs class actions in federal courts. *Id.* at 17−21. Gate Gourmet argues that Achal's

21  representative PAGA claims must be pleaded as Rule 23 class actions in federal court in order to

22  satisfy Article III standing and the prudential standing limit against third party standing, as well as

23  the *Erie* doctrine. *Id.* Achal disagrees that constitutional and prudential standing limits and the

24  *Erie* doctrine preclude the Court from hearing his PAGA representative claims, because PAGA is

25  primarily a law enforcement action and because PAGA creates substantive, and not merely

26  procedural, rights. Opp'n at 15−18.

27        Second, Gate Gourmet argues that Claims Six through Seven should be dismissed because

28  Achal has failed to allege sufficient facts in support of his PAGA claims to satisfy the pleading

United States District Court
Northern District of California

standards of Federal Rule of Civil Procedure 8(a).  Mot. at 2 (citing *Twombly*, 550 U.S. at 555).  In particular, Gate Gourmet contends that Achal fails to factually allege the elements of his claims. *Id.*  Achal asserts that the allegations pleaded in his FAC satisfy the liberal notice pleading requirements of Rule 8(a) and therefore should not be dismissed.  Opp'n at 13−15.

## III.    ANALYSIS

### A.    Legal Standard

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff need not plead a prima facie case in order to survive a motion to dismiss pursuant to Rule 12(b)(6). *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514−15 (2002); *see also Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) (reaffirming the holding of *Swierkiewicz* in light of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Twombly*).  A complaint must however "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked

United States District Court
Northern District of California

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B.   California Fair Employment and Housing Act Claims

#### 1.   Administrative Exhaustion

Under California law "an employee must exhaust the . . . administrative remedy" provided by FEHA, by filing an administrative complaint with the DFEH and obtaining a right to sue letter from the DFEH.  Cal. Gov't Code §§ 12960, 12965; *Romano v. Rockwell Int'l*, 14 Cal. 4th 479, 492 (1996).  Once the DFEH has issued a right to sue letter (whether or not the agency investigated the charge), a claimant has one year from the date of the letter to bring a civil action based upon the charge.  Cal. Gov't Code § 12960(d).

In determining whether the exhaustion requirement has been met, California law dictates that FEHA provisions are to be liberally construed to accomplish its purposes, including the resolution of potentially meritorious claims on the merits.  *Richards v. CH2M Hill, Inc.*, 26 Cal. 4th 798, 819 (2001); 2 Cal. Code Regs. § 10003 ("The department shall liberally construe all complaints to effectuate the purpose of the laws the department enforces to safeguard the civil right of all persons to seek, obtain and hold employment without discrimination."); *see also Stearns v. Fair Emp't Practices Comm'n*, 6 Cal. 3d 205, 214 (holding that DFEH charges should be construed liberally for same reasons that federal EEOC complaints should be construed liberally).  California courts have held that when submitting allegations to the DFEH, "claimants are not held to specify the charges with literary exactitude." *Soldinger*, 51 Cal. App. 4th at 381; *See Baker v. Children's Hosp. Med. Ctr.*, 209 Cal. App. 3d 1057, 1064 (1989).  California courts may adjudicate claims not specifically made in DFEH complaints so long as the new claims are "like or reasonably related" to the allegations of the original administrative charge.  *Okoli v. Lockheed Technical Operations Co.*, 36 Cal. App. 4th 1607, 1614 (1995); *Sandhu v. Lockheed Missile & Space Co.*, 26 Cal. App. 4th 846, 859 (1994); Cal. Code Regs. § 10003 ("Where the facts alleged in a discrimination complaint support . . . any other claim over which the department

United States District Court
Northern District of California

1    has jurisdiction, the department shall construe the complaint to include those claims within the

2    scope of a discrimination claim, regardless of whether such other claims are expressly stated.").

3    The Ninth Circuit has held that to do otherwise, requiring employees to return to the DFEH to

4    amend the administrative complaint, would impose a "needless procedural barrier" to FEHA's

5    enforcement. *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973).

6         In reviewing the exhaustion question in this case, the Court is required by Ninth Circuit

7    law to construe Achal's DFEH complaint liberally.  In light of this directive, the Court finds that

8    Achal has adequately pleaded administrative exhaustion under FEHA, and declines to dismiss

9    Claims One through Five on the basis of failure to exhaust administrative remedies under FEHA.

10        Achal attaches both the DFEH Complaint and the right to sue letter to the FAC, both of

11   which become part of the pleading.  FAC ¶ 15; Fed. R. Civ. P. 10(c).  FEHA requires very little in

12   the way of information that must be included in a DFEH complaint in order to obtain a right to sue

13   letter.  With respect to the charges alleged, California law only requires that a DFEH complaint

14   include the following: (1) a description of the alleged act or acts of discrimination, harassment, or

15   retaliation; (2) the date or dates of each alleged act of discrimination, harassment, or retaliation;

16   and (3) each protected basis upon which the alleged discrimination or harassment was based.[5]

17   Cal. Gov't Code § 12965; Cal. Code Regs. §§ 10002(a), 10005(d).

18        Achal has satisfied these requirements. As to the first requirement, Achal describes his

19   attendance at a religious observance and subsequent negative comments made to him by his

20   supervisor in response.  DFEH Complaint (FAC Ex. A).  Achal also describes his injury and how

21   he was terminated shortly thereafter, on his information and belief, due in part to his disability and

22   his religion.  *Id.*  He also states that Gate Gourmet did not reasonably accommodate his disability

23   or engage him in a good faith interactive process to do so.  *Id.*  As to the dates of these acts, Achal

24   includes the relevant dates surrounding his claim of disability discrimination, including the date of

25   _____

26   [5] In order to obtain an immediate right to sue letter electronically, as Achal opted to do, FEHA
     requires additional information be included in the DFEH complaint, including the names of both
27   complainant and respondent, and a sworn declaration that the information contained therein is true
     and correct, except as to matters alleged on information and belief.  Cal. Gov't Code § 12965; Cal.
28   Code Regs. § 10005(d).  All these elements were properly included.  DFEH Complaint (FAC Ex.
     A).

his injury and the date of his termination. *Id.* While Achal does not include the specific dates surrounding his religious discrimination claim, the DFEH Complaint states that all relevant facts occurred "on or around October 06, 2014." *Id.* Liberally construed, the Court accepts this as properly setting forth the dates of the alleged act of religious discrimination. The DFEH Complaint also states the protected bases upon which the alleged discrimination was based: "Complainant believes respondent committed these actions because of their: Disability, Religion, Other religious belief and observance." *Id.*

Gate Gourmet contends that Achal has failed to exhaust his administrative remedies under FEHA because his DFEH Complaint is vague and conclusory, and fails to allege specific factual details to support his allegations. Mot. at 5−6. Gate Gourmet cites the language of Cal. Gov't Code § 12960(b), which states that "[a]ny person claiming to be aggrieved by an alleged unlawful practice may file with the department a verified complaint, . . . that shall set forth the *particulars* thereof and contain other information as may be required by the department." Mot. at 5 (quoting Cal. Gov't Code § 12960(b)) (emphasis added). Gate Gourmet asserts that "particulars" for the purpose of FEHA should be construed to impose a level of factual specificity akin to the *Twombly* and *Iqbal* pleading standard. Mot. at 5−6.

Gate Gourmet cites two cases in support of this interpretation, *Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App. 4th 1718 (1994), and *Vizcaino v. Areas USA, Inc.*, No. CV 15-417-JFW (PJWx), ECF Dkt. No. 30 (C.D. Cal. Apr. 17, 2015). Mot. at 5−6. Both are inapplicable to the present case for similar reasons. Gate Gourmet cites *Martin* for its "holding that before a plaintiff can sue on an allegedly unlawful act, the plaintiff 'must [have] specif[ied] that act in the administrative complaint.'" *Martin*, 29 Cal. App. 4th at 1724. However, *Martin* does not stand for the proposition which Gate Gourmet contends, that acts must be specified with particularity. In *Martin*, the plaintiff's claims were dismissed not because she failed to allege the dismissed claims in her DFEH complaint in sufficient detail, but rather because she failed to allege them in the DFEH complaint at all. *Martin*, 29 Cal. App. 4th at 1725−27. The plaintiff in *Martin* had filed separate administrative complaints, one with the DFEH for FEHA violations, and another with the EEOC for violations of Title VII. *Id.* at 1726. When the plaintiff sought judicial relief

United States District Court
Northern District of California

United States District Court
Northern District of California

1   for FEHA claims on allegations that she had made only in the EEOC complaint, but not in the

2   DFEH complaint, the court dismissed those claims for failure to administratively exhaust her

3   remedies under FEHA.  *Id.* at 1724.  That the plaintiff in *Martin* failed to "specify" the charges, as

4   Gate Gourmet suggests, refers to making the claim itself, not to a level of detail required in setting

5   forth one's allegation.  Mot. at 5; *id.*

6       Gate Gourmet also cites *Vizcaino* to argue that conclusory language will not suffice in

7   DFEH complaints.  Indeed, Gate Gourmet appears to have derived the bulk of its administrative

8   exhaustion argument directly from that order.  However, like in *Martin*, the primary issue in

9   *Vizcaino* was the disconnect between the claims in the DFEH complaint and those alleged in the

10  judicial complaint.  *Vizcaino*, ECF Dkt. No. 30, at 4 ("Plaintiff's DFEH complaint contains only

11  vague and conclusory allegations of sexual harassment, a claim that is not even alleged in the

12  FAC.").  To the extent that the *Vizcaino* court may have also applied an *Iqbal*-like pleading

13  standard to judge the sufficiency of a DFEH complaint, the Court respectfully disagrees.

14      The Court declines to impose a high degree of specificity into DFEH complaints for

15  purposes of administrative exhaustion, as Gate Gourmet suggests, because to do so would defy the

16  well-established directive to interpret DFEH complaints liberally.  The purpose of filing a charge

17  with an administrative agency prior to filing a civil lawsuit is merely to enable that agency to

18  investigate the charges and attempt to obtain voluntary compliance with the law.  *Soldinger*, 51

19  Cal. App. 4th at 381.  The FEHA administrative exhaustion requirement is not to be construed as

20  an impediment to judicial vindication of employees' right to work free from discrimination.

21  *Oubichon*, 482 F.2d at 571; *Richards*, 26 Cal. 4th at 821.  Although Achal's DFEH complaint was

22  sparsely pleaded, given the legislative directive to liberally construe DFEH complaints, the Court

23  finds that it was sufficient to satisfy section 12960(b).[6]

24      The Court declines to dismiss Achal's FEHA claims for failure to adequately plead

25

26  _____

27  [6] Indeed, it defies logic that this Court should have jurisdiction over claims not stated <u>at all</u> in a
    DFEH complaint so long as they are like or reasonably related to claims made in the
    administrative complaint, *Sandhu*, 26 Cal. App. 4th at 859 (1994); Cal. Code Regs. § 10003, but
28  should not be permitted to hear claims expressly stated simply because they were described to the
    DFEH in summary fashion.

1    exhaustion of remedies.

2        **2. Sufficiency of the Pleadings under Federal Rule of Civil Procedure 8(a)**

3        A plaintiff need not plead a prima facie case in order to survive a motion to dismiss

4    pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Swierkiewicz*, 534 U.S. at 514−15; *see also*

5    *Starr*, 652 F.3d at 1215−16 (reaffirming the holding of *Swierkiewicz* in light of *Iqbal* and

6    *Twombly*); *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012) (same).

7    The Ninth Circuit has interpreted *Iqbal* and *Twombly* to hold that (1) to be entitled to the

8    presumption of truth, allegations in a complaint may not simply recite the elements of a cause of

9    action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

10   the opposing party to defend itself effectively; and (2) the factual allegations that are taken as true

11   must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing

12   party to be subjected to the expense of discovery and continued litigation.  *Starr,* 652 F.3d at 1216.

13   While a plaintiff need not plead facts constituting all elements of a prima facie employment

14   discrimination case in order to survive a Rule 12(b)(6) motion to dismiss, courts nevertheless look

15   to those elements to analyze a motion to dismiss, so as to decide, in light of judicial experience

16   and common sense, whether the challenged complaint contains sufficient factual matter, accepted

17   as true, to state a claim for relief that is plausible on its face.  *Sheppard*, 964 F.3d at 1050 n.2;

18   *Jianjun Xie v. Oakland Unified Sch. Dist.*, No. C 12-02950 CRB, 2013 WL 812425, at *4 n.3

19   (N.D. Cal. Mar. 5, 2013) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir.

20   2012)).

21        a.   Disability Discrimination in Violation of Cal. Gov't Code § 12940(a)

22        FEHA provides, in pertinent part, that it is an unlawful employment practice "[f]or an

23   employer, because of the . . . physical disability . . . of any person, to refuse to hire or employ the

24   person or . . . discharge the person from employment . . . or to discriminate against the person in

25   compensation or in terms, conditions or privileges of employment."  Cal. Gov't Code § 12940(a).

26   A prima facie disability discrimination case requires that Achal show that he (1) suffered from a

27   disability, or was regarded as suffering from a disability; (2) could perform the essential duties of

28   the job with or without reasonable accommodations; and (3) was subjected to an adverse

United States District Court
Northern District of California

employment action because of the disability or perceived disability.  *Wills v. Super. Ct.*, 194 Cal. App. 4th 312, 328−29 (2011).  FEHA defines "physical disability" as a condition that both affects one or more bodily system and limits a major life activity, including working.[7]  Cal. Gov't Code § 12926(m)(1).  "Essential duties" are defined as "the fundamental job duties of the employment position of the individual with a disability holds or desires."  Cal. Gov't Code § 12926(f)(1). Determining the essential functions of a position requires a highly fact-intensive inquiry.  *Lui v. City & Cnty. of San Francisco*, 211 Cal. App. 4th 962, 971 (2012).  The standard for determining whether an employee has been subjected to "adverse employment action" is whether employment action materially affected "terms and conditions of employment," with that term being liberally construed in order to afford employees "appropriate protection against employment discrimination."  Cal. Gov't Code §§ 12940(a) and (h); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1054 (2005).  California courts have held that termination, dissemination of a negative employment reference, and issuance of a negative performance evaluation all constitute adverse employment actions.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928−29 (9th Cir. 2000).  To satisfy the third element of a section 12940(a) disability discrimination claim, the plaintiff's disability must have been a "substantial motivating factor" in the particular employment decision. *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 233 (2013).

Achal specifically alleges that he fell from a platform at work, sustaining orthopedic injuries.  FAC ¶ 10.  Achal then alleges that Gate Gourmet filed a workers' compensation form in response to his injury.  *Id.* at ¶ 11.  While not explicit, the Court can infer that the disability for which Achal filed a workers' compensation claim is the collection of physical limitations he suffered as a result of his fall.  He further alleges that this injury interfered with a major life function, as it caused lifting and bending restrictions that impaired his ability to work.  *Id.*  Achal alleges that because Gate Gourmet received periodic updates on his condition, Gate Gourmet was

---

[7] Gate Gourmet has misstated the law by alleging that a disability must "substantially" limit a major life activity for purposes of establishing a disability under FEHA.  *Colmenares v. Braemer Country Club, Inc.*, 29 Cal. 4th 1019, 1031−32 (2003) (holding that a plaintiff need only show that a condition limits, as opposed to substantially limits (the federal requirement), his ability to participate in a major life activity).

aware of his disability.  *Id.* at ¶¶ 11, 13.  While Achal does not set forth what the essential duties of his position with Gate Gourmet were, he specifically alleges that Gate Gourmet stated that Achal performed "in good standing" and that there was "never any question" as to his job performance, even after returning to work from medical leave.  *Id.* at ¶ 12.  The Court can infer from these allegations that Achal was capable of performing the essential duties of his position with reasonable accommodation.  Achal then describes the circumstances surrounding his termination, including the allegation that despite admitting that it had not pursued independent investigation into the matter, Gate Gourmet terminated him for purportedly causing his own disability.  *Id.* at ¶¶ 13−14.

Achal's FAC sufficiently pleads specific, non-conclusory facts that place Gate Gourmet on notice of the disability discrimination claim against it and that, taken as true, plausibly suggest an entitlement to relief.  Although Achal's FAC is thin on this claim, it does make factual allegations that go beyond reciting the elements of a claim of disability discrimination.  These allegations are neither "bald" nor "conclusory," and hence are entitled to the presumption of truth.  *Starr*, 652 F.3d at 1216 (quoting *Iqbal*, 556 U.S. at 681).  The allegations support a plausible inference that Achal had a disability, could nevertheless perform the essential duties of his position, and suffered an adverse employment action (termination) on the basis of his disability.  Although Achal's own allegations reveal that Gate Gourmet offered a non-discriminatory reason for Achal's termination—specifically, that Gate Gourmet believed Achal was fraudulently seeking benefits—Achal alleges that Gate Gourmet conducted no investigation that would serve as a basis for making this accusation.  FAC ¶ 13.  This gives rise to a plausible inference, at least for purposes of this motion, that the proffered reason was pretextual, and that his disability was at least a substantial motivating factor in his termination.  *See Earl v. Nielson Media Research, Inc.*, 658 F.3d 1108, 1112−13 (9th Cir. 2011) ("A plaintiff may demonstrate pretext . . . by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable.").  For the reasons set forth above, the Court finds that Achal's claim for disability discrimination adequately states a claim.

1

        b.   Failure to Make Reasonable Accommodations in Violation of Cal. Gov't
             Code § 12940(m)

2      FEHA makes it unlawful "for an employer . . .  to fail to make reasonable accommodation

3   for the known physical . . . disability of an applicant or employee." Cal. Gov't Code § 12940(m).

4   Under FEHA, an employer's failure to reasonably accommodate a disabled employee is a

5   violation of the statute in and of itself.  The elements of a prima facie claim for failure to make

6   reasonable accommodation claim are: (1) the plaintiff has a disability covered by FEHA; (2) the

7   plaintiff is qualified to perform the essential functions of the position; and (3) the employer failed

8   to reasonably accommodate the plaintiff's disability.  *Scotch v. Art Inst. of Cal.—Orange Cnty.,*

9   *Inc.*, 173 Cal. App. 4th 986, 1010 (2009).  "Reasonable accommodation" means a "modification

10  or adjustment to the workplace that enables a disabled employee to perform the essential functions

11  of the job held or desired." *Taylor v. Trees, Inc.*, 58 F. Supp. 3d 1092, 1111 (E.D. Cal. 2014); *see*

12  *also* Cal. Gov't Code § 12926(p).  The reasonableness of an accommodation is generally a

13  question of fact.  *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 218, 228 n.11 (1999).  A claim

14  under section 12940(m) differs from a section 12940(a) discrimination claim in that an adverse

15  employment action need not be shown, nor is any showing of a causal nexus between one's

16  disability and an adverse employment action required.  *Jensen v. Wells Fargo Bank*, 85 Cal. App.

17  4th 245, 255−56 (2000).

18      To face liability under section 12940(m), an employer must have been aware of the

19  employee's disability.  *King v. United Parcel Serv., Inc.*, 152 Cal. App. 4th 426, 443 (2007)

20  ("'[The] employee can't expect the employer to read his mind and know he secretly wanted a

21  particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily

22  liable for failing to accommodate a disability of which it had no knowledge.'" (quoting *Prilliman*

23  *v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 954 (1997))).  Ordinarily, an employee is

24  responsible for requesting accommodation for his or her disability, unless the employer itself

25  recognizes that an employee has a need for such accommodation.  *Brown v. Lucky Stores*, 246

26  F.3d 1182, 1188 (9th Cir. 2001).  Once aware, the employer has an affirmative duty to reasonably

27  accommodate, which is not extinguished by one effort.  *Swanson v. Morongo Unified Sch. Dist.*,

28  232 Cal. App. 4th 954, 969 (2014).  It is the employee's responsibility to understand his own

condition well enough to present the employer at the earliest opportunity with a concise list of restrictions which must be met to accommodate the employee.  *Id.*  An employee seeking reasonable accommodation cannot, however, make an employer provide one specific accommodation if another is provided instead, so long as that accommodation is reasonable and effective.  *Hanson*, 74 Cal. App. 4th at 228.  Nor are employees entitled to the "best" accommodation.  *Id.*

Achal has alleged sufficient facts to support his claim that Gate Gourmet failed to make reasonable accommodations for his disability.  Here, while Achal's claim is thin, Achal does allege that Gate Gourmet was aware of his disability, and that he returned to work with lifting and bending restrictions.  FAC ¶¶ 11−12.  As described above in the context of his disability discrimination claim, Achal has alleged sufficient facts to plausibly suggest, at least for the purposes of this motion, that Gate Gourmet terminated him at least in part because of his disability.  Regardless of whether Gate Gourmet accommodated Achal's disability at any one point, Gate Gourmet had a continuous duty to make these accommodations so long as Achal's disability required them.  *Swanson*, 232 Cal. App. 4th at 969.  Achal has alleged facts suggesting that instead of upholding its duty to make reasonable accommodations for his disability, Gate Gourmet "[sought] a pretextual reason for terminating [him]."  FAC ¶ 12.  The Court is persuaded that Achal's second claim, failure to make reasonable accommodations for his disability, meets the minimum pleading requirements set forth by *Iqbal* and *Twombly*.  The Court therefore denies Gate Gourmet's motion to dismiss with regard to Claim Two of Achal's FAC.

### c.   Failure to Engage in Interactive Process in Violation of Cal. Gov't Code § 12940(n)

Under FEHA, an employer's failure "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations" is a violation of the statute separate from any failure to make reasonable accommodations for a qualified employee's disability.  Cal. Gov't Code § 12940(n); *Wilson v. Cnty. of Orange*, 169 Cal. App. 4th 1185, 1993 (2009).  FEHA imposes on employers a mandatory obligation to engage in the interactive process once an employee requests an accommodation for his or her disability, or when the employer itself

15

recognizes the need for one. *Brown*, 246 F.3d at 1188. Once initiated, the employer has a continuous obligation to engage in the interactive process in good faith. *Swanson*, 232 Cal. App. 4th at 971. The interactive process "requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identifying an accommodation that allows the employee to perform the job effectively." *Yeager v. Corr. Corp. of Am.*, 944 F. Supp. 2d 913, 919 (E.D. Cal. 2013). To prevail on a section 12940(n) claim, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred. *Nealy v. City of Santa Monica*, 234 Cal. App. 4th 359, 379 (2015). Plaintiffs are not required to identify such a reasonable accommodation at the pleading stage, however, because often "[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have." *Id.* (quoting *Scotch*, 173 Cal. App. 4th at 1018).

The Court finds that Claim Three of Achal's FAC pleads sufficient non-conclusory facts to plausibly state a claim for relief. Achal alleges that Gate Gourmet failed to engage him in "timely, good faith, or interactive discussions." FAC ¶ 39. While also thin on this claim, Achal has sufficiently alleged that he had a disability of which Gate Gourmet was aware. He has also sufficiently alleged facts suggesting that Gate Gourmet's proffered reason for his termination was pretextual, and that his disability was actually a substantial motivating factor in his termination. As discussed above in the context of Achal's failure to accommodate claim, Achal has sufficiently alleged a need for reasonable accommodations for his disability, which would give rise to Gate Gourmet's obligation to engage him in a good faith interactive process. Achal alleges that instead of doing so, Gate Gourmet "[sought] a pretextual basis to terminate him," and ultimately did terminate him. *Id.* at ¶ 12−13. This suffices at the pleadings stage to give Gate Gourmet fair notice of the claim against it and to allow Gate Gourmet to prepare an effective defense. The Court therefore denies Gate Gourmet's motion to dismiss with regard to Claim Three of Achal's FAC.

d.  Religious Discrimination in Violation of Cal. Gov't Code §§ 12940(a) and (*l*)

i.  § 12940(a)

FEHA provides, in pertinent part, that it is an unlawful employment practice "[f]or an employer, because of the . . . religious creed . . . of any person, to refuse to hire or employ the person or . . . discharge the person from employment . . . or to discriminate against the person in compensation or in terms, conditions or privileges of employment."  Cal. Gov't Code § 12940(a). To establish a prima facie discrimination claim under FEHA, a plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for his position; (3) he experienced an adverse employment action; and (4) other similarly situated employees outside of the protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.  *Slatkin v. Univ. of Redlands*, 88 Cal. App. 4th 1147, 1158 (2001) (applying this standard to FEHA religious discrimination claim).  The requirement that the employee be able to perform the essential duties of the position and the requirement that the employee suffer an adverse employment action are the same as those for a disability discrimination claim, as discussed above.  As to the fourth element, discrimination can be proven by direct or circumstantial evidence.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221−22 (9th Cir. 1998).  Applying California law, the Ninth Circuit has held that a mere comment suggesting the existence of bias can be direct evidence of discriminatory animus, "which, if believed, proves the fact [of discriminatory animus] without inference of presumption."  *Id.* at 1221 ("Godwin produced evidence of direct discrimination. . . . She presented a statement . . . that Guthier 'did not want to deal with another female after having dealt with . . . Louise De PreFontaine.'  This comment directly suggests the existence of bias and no inference is necessary to find discriminatory animus.") (citations omitted).  Where direct evidence of discriminatory motive is unavailable, a plaintiff may offer circumstantial evidence of discrimination that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable.  *Id.* at 1222.

As to his religious discrimination claim, Achal alleges that he is a member of the Hindu faith.  FAC ¶ 7.  Achal alleges that he requested time off from work to return to Fiji for a Hindu

17

United States District Court
Northern District of California

1   funeral and religious observance.  *Id.*  Achal further alleges that Gate Gourmet granted this time

2   off, and that Achal was not at work from April 26, 2014 through May 16, 2014.  *Id.*  Upon his

3   return, Achal alleges that his supervisor, Adolfo Clavo, made disparaging comments regarding his

4   absence, including his opinion that it was "ridiculous for a religious ceremony to take so long."

5   *Id.* at ¶ 8.  From the above allegations, the Court can infer that Gate Gourmet was aware of

6   Achal's Hindu faith.  Achal alleges that, following these comments, Clavo gave him unfavorable

7   scheduling and made unreasonable work demands.  *Id.* at ¶ 9.  Achal specifically alleges that

8   Clavo set him up for failure on a particular assignment, resulting in a negative write-up.  *Id.*

9   While Achal does not explicitly set forth his qualifications for his position with Gate Gourmet, he

10  does allege that Gate Gourmet conceded that Achal performed "in good standing" and that there

11  was "never any question" as to his job performance during his employment with Gate Gourmet.

12  *Id.* at ¶ 12.  The Court can infer from these allegations that Achal was qualified for the position.

13  Achal describes the circumstances surrounding his termination, including his allegation that

14  despite admitting that it had not pursued independent investigation into the matter, Gate Gourmet

15  terminated him for purportedly fraudulently seeking benefits.  *Id.* at ¶¶ 13−14.

16      Claim Four of Achal's FAC regarding section 12940(a) sufficiently pleads specific, non-

17  conclusory facts that place Gate Gourmet on notice of the religious discrimination claim against it

18  and that, taken as true, plausibly suggest an entitlement to relief.  Although Achal's FAC is also

19  relatively thin on this claim, it does make factual allegations that go beyond reciting the elements

20  of a religious discrimination claim.  The allegations set forth in Claim Four of Achal's FAC as

21  regards section 12940(a) are neither "bald" nor "conclusory," and hence are entitled to the

22  presumption of truth.  *Starr*, 652 F.3d at 1216 (quoting *Iqbal*, 556 U.S. at 681).  The allegations

23  support a plausible inference that Achal is a member of a protected class, that he was qualified for

24  his position, that he suffered adverse employment actions (at the very least, a negative

25  performance review and termination), and that these employment decisions were made, at least in

26  part, on the basis of his membership in the protected class.  Achal has alleged facts, taken as true,

27  that qualify as both direct and circumstantial allegations of discriminatory animus.  First, Achal

28

18

has alleged that his supervisor made disparaging comments that explicitly referenced his religion.[8]

FAC ¶ 8. Second, although Achal's own allegations reveal that Gate Gourmet offered a non-discriminatory reason for Achal's termination—specifically, that Gate Gourmet believed Achal was fraudulently seeking benefits—Achal alleges that Gate Gourmet conducted no investigation that would serve as a basis for making this accusation. *Id.* at ¶ 13. This gives rise to a plausible inference, at least for purposes of this motion, that the proffered reason was pretextual, and—in conjunction with Clavo's alleged comments—that his religion was at least a significant motivating factor in his termination. *Earl*, 658 F.3d at 1112−13. These incidents are sufficiently detailed to give notice to Gate Gourmet of the nature of Achal's religious discrimination claim against it and to give it a fair opportunity to defend against it. The Court therefore declines to dismiss this cause of action.

### ii.   § 12940(*l*)

FEHA also makes it an unlawful employment practice for an employer "to discharge a person from employment . . . or to discriminate against a person . . . because of a conflict between the person's religious belief and observance and any employment requirement, unless the employer . . . demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance . . . but is unable to reasonably accommodate the religious belief or observance without undue hardship." Cal. Gov't Code § 12940(*l*). While not required to plead all the elements of a prima facie case at the pleading stage, a successful section 12940(*l*) claim requires that a plaintiff show (1) the employee sincerely held a religious belief; (2) the employer was aware of that belief; and (3) the belief conflicted with an employment requirement. *Friedman v. S. Cal. Permanente Med. Grp.*, 102 Cal. App. 4th 39, 45 (2002). A

---

[8] Gate Gourmet argues that Achal has failed to adequately plead that Clavo is a "supervisor" for purposes of FEHA, whose actions would be attributable to Gate Gourmet on the basis of *respondeat superior*. Mot. at 12; *see* Cal. Gov't Code § 11009(b). "Supervisor" means "any individual having the authority, in the interest of the employer, to . . . assign, reward, or discipline other employees, or the responsibility to direct them." Cal. Gov't Code § 12926(t). Achal's allegations, specifically those setting forth job titles and describing the nature of Clavo's retaliation, allow the Court to make the plausible inference that Clavo was a supervisor in relation to Achal, and that Clavo's actions may therefore be attributed to Gate Gourmet. FAC ¶¶ 6, 7, 9.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   plaintiff must also show that he suffered an adverse employment action to establish a prima facie

2   FEHA discrimination claim.  *Flait v. N. Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992).

3          While FEHA does not explicitly define "conflict" as it regards an employment

4   requirement, applicable California regulations and both federal and state case law establish that an

5   employee's attendance at a religious observance that requires him to be absent from work during

6   normally scheduled hours or that requires him to work a different schedule altogether qualifies as

7   a "conflict" for purposes of FEHA religious discrimination claims.  *See Cal. Fair Emp't & Hous.*

8   *Comm'n v. Gemini Aluminum Corp.*, 122 Cal. App. 4th 1004, 1016 (2004) (employment conflict

9   existed sufficient to support section 12940(*l*) claim where employee required to work from

10  Monday to Friday sought leave to attend religious convention beginning on Friday); *see also Cook*

11  *v. Lindsay Olive Growers*, 911 F.2d 233, (9th Cir. 1990) (employer's scheduling arrangement

12  satisfied its duty to reasonably accommodate employee's religious observance, which prevented

13  him from working from sunset Friday to sunset Saturday); *Heller v. EBB Auto Co.*, 8 F.3d 1433,

14  1439 (9th Cir. 1993) (plaintiff's attendance at his wife and son's Jewish conversion ceremony was

15  a protected religious observance, which created a conflict with his employment duty to be at work

16  during those days regardless of whether plaintiff attempted to reschedule); 2 Cal. Code Regs.

17  § 11062 (defining reasonable accommodation for purposes of section 12940(*l*) to include

18  "allowing time off . . . to avoid a conflict with [an employee's] religious observance").  The

19  statute, however, does allow an employer to discharge or take other adverse action against an

20  employee on the basis of a conflict between the employee's religious belief or observance and an

21  employment requirement if the employer is able to show that it cannot reasonably accommodate

22  the employee's religious needs without undue hardship.  Cal. Gov't Code § 12940(*l*); *Cook*, 911

23  F.2d at 241.

24         Achal has alleged sufficient facts to state a section 12940(*l*) religious belief or observance

25  discrimination claim.  Achal's allegations made with regards to his section 12940(*l*) claim support

26  a plausible inference that Gate Gourmet discharged him at least partially on the basis of a conflict

27  between his religious belief or observance and his employment duties.  Specifically, Achal

28  pleaded that he is a member of the Hindu faith, and that he took time off from work to attend a

Hindu funeral and Hindu religious observance.[9]  FAC ¶ 7.  Achal also alleged that his supervisor "questioned the religious observance by stating that it was 'ridiculous for a religious ceremony to take so long.'"  *Id.* at ¶ 8.  From this, the Court can infer that Gate Gourmet was aware both of Achal's belief and that his absence was to attend a religious observance.  Further, because attendance at work is considered an employment requirement, Achal's allegations sufficiently plead that an employment conflict arose as a result of Achal's religious need to be absent.  Achal further pleads that he suffered an adverse employment action—he was terminated.  *Id.* at ¶¶ 12−14.

Gate Gourmet argues that because Achal's time off request was granted, "Plaintiff's time away could not conflict with any requirement that Plaintiff be at work."  Reply at 7.  This argument, however, speaks only to the issue of whether the employer made reasonable accommodations of that religious belief or observance.  That Gate Gourmet may have provided reasonable accommodation for Achal's religious needs does not preclude the possibility that Gate Gourmet later discriminated against Achal on the basis of the conflict.  Although neither party cited authority addressing this issue directly, it would significantly undermine the purpose of the statute if merely accommodating a conflict in the first instance could serve to insulate an employer from liability for terminating an employee based on the conflict.  To use a hypothetical example based loosely on the *Cook* case discussed briefly above, section 12940(*l*) would be ineffective if an employer could comply by excusing an employee from work on his Saturday sabbath but greeting him with a termination notice when he returned to work Sunday morning.  Accordingly, all that is required at this stage is that Achal plead sufficient facts to suggest that he suffered an adverse discrimination action based on a conflict between his religious needs and his employment duties.  The allegations made in Claim Four of Achal's FAC regarding section 12940(*l*) are sufficiently detailed to plausibly suggest an entitlement to relief and to give Gate Gourmet notice of the claim and a fair opportunity to defend against it.  The Court therefore denies Gate Gourmet's motion to dismiss Achal's claim for section 12940(*l*) religious discrimination.

_____

[9] Gate Gourmet does not appear to dispute that the Hindu funeral and related religious observance qualify as protected religious observances for purposes of the FEHA.

United States District Court
Northern District of California

e.   <u>Failure to Prevent Discrimination in Violation of Cal. Gov't Code § 12940(k)</u>

FEHA makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment . . . from occurring."  Cal. Gov't Code § 12940(k).  A plaintiff seeking to recover on a failure to prevent discrimination claim under FEHA must show that (1) he was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm.  *Leland v. City & Cnty. of San Francisco*, 576 F. Supp. 2d 1079, 1103 (N.D. Cal. 2008). The employer's duty to prevent harassment and discrimination is affirmative and mandatory. *Northrup Grumman Corp. v. Workers' Comp. Appeals Bd.*, 103 Cal. App. 4th 1021, 1035 (2002). No liability can arise for failing to take necessary steps to prevent discrimination, however, except where discriminatory conduct actually took place and was not prevented.  *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) ("[T]he statutory language [does not] support[] recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred.").  Some examples of "reasonable steps" available to remedy harassment, discrimination, or retaliation under FEHA include "affirmatively raising the subject of harassment, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under California law, and developing methods to sensitize all concerned."  2 Cal. Code Regs. § 11019(b).  Other reasonable steps an employer might take include the establishment and promulgation of antidiscrimination policies and the implementation of effective procedures to handle discrimination-related complaints and grievances.  *Gemini Aluminum Corp.*, 122 Cal. App. 4th at 1025.  The causation element of a section 12940(k) claim requires an employee show that the discriminatory conduct was a "substantial factor" in causing his harm.  CACI No. 2527; *Alamo v. Practice Mgmt. Info. Corp.*, 219 Cal. App. 4th 466, 480 (2013).  Termination from employment is an injury sufficient to support recovery under a section 12940(k) failure to prevent discrimination claim.  *See Gemini Aluminum Corp.*, 122 Cal. App. 4th at 1025.

The Court finds that Gate Gourmet is not entitled to a dismissal with respect to Achal's claim for failure to prevent discrimination.  As Achal correctly points out in his Opposition, a

failure to prevent discrimination claim is "essentially derivative of a discrimination claim." Opp'n at 13 (citing *Trujillo*, 63 Cal. App. 4th at 289). As discussed above, Achal pleaded sufficient facts to support his claims of both disability and religious discrimination. Achal has therefore adequately pleaded the requisite foundation of discrimination required for a section 12940(k) claim. Further, Achal pleaded several facts, that taken as true, support a plausible inference that while Gate Gourmet was aware of at least the alleged disability discrimination, it nevertheless took no steps to remedy it. Specifically, Achal alleges that Brett Appleberg, a human resources director at Gate Gourmet, issued him a letter on October 6, 2014 in which Gate Gourmet set forth its given reason for Achal's termination—making a fraudulent claim for benefits. FAC ¶ 13. Achal further alleges that neither Appleberg nor any other Gate Gourmet representative conducted an independent investigation of this claim, and therefore it had no basis for making this accusation. *Id.* Achal also alleges that the termination decision was reviewed and/or approved by Appleberg, Appleberg's direct supervisor, and the Regional Worker's Compensation Manager, Paula Morales. *Id.* at ¶ 14. Although somewhat of a close call, construing the allegations in the light most favorable to Achal, these allegations support a plausible inference that Gate Gourmet was aware of Achal's disability, that Achal was discriminated against on the basis of his disability, that Gate Gourmet did not take all reasonable measures to prevent the discrimination from occurring, and that this discriminatory conduct was a "substantial factor" in causing his termination. The Court therefore denies Gate Gourmet's motion to dismiss Claim Five of Achal's FAC.

### C.   California Private Attorneys General Act Claims

The California legislature enacted PAGA to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations when the labor law enforcement agencies could not keep pace with the growth of the labor market. *Halliwell v. A-T Solutions*, 983 F. Supp. 2d 1179, 1182 (S.D. Cal. 2013). The statute was not enacted as a means of recovering damages or restitution, but rather as a means of "deputizing" citizens as private attorneys general to enforce the Labor Code. *Reyes v. Macy's, Inc.*, 202 Cal. App. 4th 1119, 1123 (2011). A PAGA plaintiff, therefore, may not bring a claim on his own behalf, but must bring it as

a representative action including other current or former employees of the alleged violator.  *Id.*

PAGA defines "aggrieved employee" as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Lab. Code § 2699(c).  Prior to bringing a civil action, an aggrieved employee is required to fulfill the administrative exhaustion prerequisites set forth by Labor Code section 2699.3.[10]  *Id.* § 2699(a). Where the Labor Code does not set forth its own penalty, PAGA sets forth a civil penalty of one hundred dollars for each aggrieved employee per pay period for the initial violation and two hundred dollars for each aggrieved employee per pay period for each subsequent violation.  *Id.* § 2699(f)(2).  In cases where the plaintiff brings a representative PAGA action and prevails, the aggrieved employees are statutorily entitled to 25% of the civil penalties recovered while the LWDA is entitled to 75%.  *Id.* § 2699(i); *Urbino v. Orkin Servs. of Cal.*, 726 F.3d 1118, 1121 (9th Cir. 2013).

### 1.  Representative PAGA Actions and Rule 23

Gate Gourmet argues that Achal's PAGA claims are barred by his failure to plead satisfaction of the class certification requirements of Federal Rule of Civil Procedure 23.  Mot. at 17−22.  According to Gate Gourmet, allowing PAGA representative claims to proceed outside of Rule 23 would violate Article III and prudential standing requirements, as well as the *Erie* doctrine.  *Id.*

Although the Ninth Circuit has not yet decided whether class certification under Rule 23 is required to bring a representative PAGA claim in federal court, the majority of courts in this district that have addressed the issue have held that "representative PAGA claims need not be certified under Rule 23 to proceed" in light of the purpose of a PAGA representative action, which is "to vindicate the public through the imposition of civil penalties as opposed to conferring a private benefit upon the plaintiff and the represented employees."  *Gallardo v. AT & T Mobility, LLC*, 937 F. Supp. 2d 1128, 1137 (N.D. Cal. 2013) (citing cases) (internal quotation marks

---

[10] Gate Gourmet does not appear to contest that Achal is an aggrieved employee for purposes of the statute.  Nor does Gate Gourmet appear to dispute that Achal has satisfied the administrative exhaustion prerequisites to a representative PAGA action as set forth by Labor Code section 2699.3 and pleaded by Achal.  FAC ¶¶ 23−24.

United States District Court
Northern District of California

omitted).  Speaking on the issue of whether PAGA actions are sufficiently similar to Rule 23 to trigger Class Action Fairness Act ("CAFA") jurisdiction, the Ninth Circuit declared that "Rule 23 and PAGA are more dissimilar than alike."  *Baumann v. Chase Inv. Servs. Corp.,* 747 F.3d 1117, 1124 (9th Cir. 2014).  Before and after *Baumann,* courts in this district have routinely held that "PAGA actions, though representative, need not be brought as class actions under Rule 23."  *See Willner v. Manpower Inc.,* 35 F. Supp. 3d 1116, 1135 (N.D. Cal. 2014) ("[T]he vast majority of courts in this district . . . have held that representative PAGA claims need not be certified under Rule 23 to proceed. . . .") (internal citations and quotation marks omitted); *Villalpando v. Exel Direct Inc.*, No. 12-CV-04137 JCS, 2014 WL 1338297, at *20–21 (N.D. Cal. Mar. 28, 2014); *Ortiz v. CVS Caremark Corp.*, No. C-12-05859 EDL, 2014 WL 1117614, at *2 (N.D. Cal. Mar. 19, 2014); *Gallardo v. AT & T Mobility, LLC,* 937 F. Supp .2d 1128, 1138 (N.D. Cal. 2013); *Moua v. Int'l Bus. Machines Corp.*, No. 5:10-CV-01070 EJD, 2012 WL 370570, at *3 (N.D. Cal. Jan. 31, 2012).  Likewise, the California Supreme Court has conclusively held that PAGA claims do not need to satisfy class action requirements to proceed in state court.  *See Arias v. Super. Ct.*, 46 Cal. 4th 969, 981–86 (2009).  The *Arias* court recognized that state class-certification requirements did not apply to PAGA claims because, unlike a class action, which seeks recovery on behalf of individual employees, an employee suing under PAGA steps into the shoes of California's labor law enforcement agencies.  *Id.* at 986.

Gate Gourmet argues that this Court should adopt the minority opinion—that because PAGA is a procedural statute allowing for recovery to unnamed non-parties, an individual plaintiff lacks standing to recover on behalf of these third parties absent class certification.  *See, e.g., Taylor v. W. Marine Prods., Inc.*, No. C 13-04916 WHA, 2014 WL 1248162, at *2 (N.D. Cal. Mar. 26, 2014) (applying the more stringent Rule 23 standard to representative PAGA claims, "because Article III 'require[s] a plaintiff to show, *inter alia*, that he has actually been injured by the defendant's challenged conduct.'"); *Halliwell*, 983 F. Supp. 2d at 1184; *Fields v. QSP, Inc.*, No. CV 12-1238 CAS, 2012 WL 2049528, at *5 (C.D. Cal. June 4, 2012); *Ivey v. Apogen Techs., Inc.*, No. 11CV366 DMS NLS, 2011 WL 3515936, at *3 (S.D. Cal. Aug. 8, 2011); *Thompson v. APM Terminals Pac. Ltd.*, No. C 10-00677 JSW, 2010 WL 6309364, at *2 (N.D. Cal. Aug. 26,

United States District Court
Northern District of California

2010) ("To the extent Plaintiff here seeks to bring a representative PAGA action on behalf of other non-party, unnamed aggrieved employees in federal court, such a claim must meet the requirements of Rule 23."); *Adams v. Luxottica U.S. Holdings Corp.*, No. SA CV 07-1465 AHS, 2009 WL 7401970, at *2 (C.D. Cal. July 24, 2009) ("Having failed to comply with the certification requirements of Rule 23, plaintiffs lack standing to represent the rights and interests of third parties.  Although PAGA authorizes representative actions, California state law cannot alter federal procedural and jurisdictional requirements."); Mot. at 18.

These courts base their decisions on the Article III standing requirement that a plaintiff show that he has actually been injured by the defendant's challenged conduct, *Taylor*, 2014 WL 1248162, at *2, and the federal prudential standing limit against third party standing, which requires a plaintiff assert his own legal rights and interests, and prohibits him from raising the rights of parties not before the court.  *Ivey*, 2011 WL 3515936, at *3.  Accordingly, Gate Gourmet argues that Achal's PAGA claims must satisfy Rule 23 because the represented unnamed aggrieved employees' "interests are plainly represented, and . . . will gain or lose rights depending on how the private action is adjudicated."  Mot. at 20.  This position relies on the assumption that "PAGA claims are representative actions brought on behalf of other aggrieved employees," rather than a law enforcement action representing the interest of the state.  *McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222, 1234 (2011) (quoting *Mendez v. Tween Brands, Inc.*, No. 2:10-cv-00072-MCE-DAD, 2010 WL 2650571, at *4 (E.D. Cal. July 1, 2010)).  The Court respectfully disagrees, however, with the minority of courts who take this view.

First, the state supreme court has recognized that PAGA representative claims are "a type of *qui tam* action."  *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 382 (2014).  It is well-established that citizen-relators bringing *qui tam* suits on behalf of the government have Article III standing.  *Vt. Agency of Natural Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 777−78 (2000) ("We think this history well nigh conclusive . . . it leaves no room for doubt that a *qui tam* relator under the FCA has Article III standing.").  The traditional requirements for enforcement by a citizen in a *qui tam* suit are (1) that the statute exacts a penalty; (2) that part of the penalty be paid to the informer; and (3) that, in some way, the informer be authorized to bring

suit to recover the penalty.  *Sanders v. Pac. Gas & Elec. Co.*, 53 Cal. App. 3d 661, 671 (1975).

PAGA conforms to the *qui tam* requirements, except that a portion of the penalty goes not only to

the citizen bringing the suit, but also to all employees aggrieved by the Labor Code violation.

*Iskanian*, 59 Cal. 4th at 382.  The purpose of PAGA is not to recover damages or restitution, but to

create a means of "deputizing" citizens as private attorneys general to enforce the Labor Code.

*Reyes*, 202 Cal. App. 4th at 1123; *Amalgamated Transit Union, Local 1756, AFL-CIO v. Super.*

*Ct.*, 46 Cal. 4th 993, 1003 (2009) ("In bringing an action under PAGA, the aggrieved employee

acts as the proxy or agent of state labor law enforcement agencies, representing the same legal

right and interest as those agencies, in a proceeding designed to protect the public, not to benefit

private parties").  PAGA plaintiffs do not assert the rights of third party employees, but instead

represent the interests of the state labor law enforcement agency.  *McKenzie*, 765 F. Supp. 2d at

1234.  The state labor law agency on whose behalf the representative plaintiff sues is therefore

"always the real party in interest in the suit."  *Iskanian*, 59 Cal. 4th at 382.

Second, the rights of the non-party aggrieved employees are not estopped or limited by a

judgment against an employer in a PAGA action.  Cal. Lab. Code § 2699(g)(1) (a PAGA action,

unlike a class action, does not limit "an employee's right to pursue or recover other remedies

available under federal law, either separately or concurrently with [a PAGA] action"); *Baumann* at

1123 (""[I]f the employer defeats a PAGA claim, the nonparty employees, because they were not

given notice of the action or afforded an opportunity to be heard, are not bound by the judgment as

to remedies other than civil penalties.'" (quoting *Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C

08-2073 MHP, 2010 WL 1340777, at *4 (N.D. Cal. Apr. 2, 2010))).   By contrast, a PAGA

judgment operates as "one-way" collateral estoppel that permits absent employees to use a

favorable judgment against employers to recover PAGA penalties, but precludes an employer

from using a judgment in its favor to prevent future suits by absent nonparty employees.  *Arias*, 26

Cal. 4th at 987 ("Because an action under the act is designed to protect the public, and the

potential impact on remedies other than civil penalties is ancillary to the action's primary

objective, the one-way operation of collateral estoppel in this limited situation does not violate the

1    employer's right to due process of law.").[11]

2    Gate Gourmet cites the Ninth Circuit's decision in *Urbino v. Orkin Services of California*,

3    726 F.3d 1118 (9th Cir. 2013), to argue that PAGA claims are not law enforcement actions, but

4    rather claims held by individuals. *Urbino*, 726 F.3d at 1122; Mot. at 18. Gate Gourmet

5    mischaracterizes, however, the applicability of *Urbino* to the case at bar. Particularly, Gate

6    Gourmet's assertion that *Urbino* "confirms that [representative PAGA] claims must be brought

7    pursuant to Rule 23" goes well beyond the holding of that case. Mot. at 18. In *Urbino*, the Ninth

8    Circuit considered the question of whether civil penalties sought to be recovered by an aggrieved

9    employee under PAGA could be aggregated to meet the amount in controversy requirement for

10   federal diversity jurisdiction. *Urbino*, 726 F.3d at 1122. The Ninth Circuit answered in the

11   negative; that a representative plaintiff bringing a PAGA claim may not aggregate the individual

12   wage and hour claims of aggrieved employees since those claims are held individually. *Id.*

13   *Urbino* does not stand for a requirement that PAGA claims heard in federal court be

14   brought pursuant to Rule 23. Contrary to Gate Gourmet's arguments, that opinion did not reach a

15   definitive conclusion on the nature of PAGA claims. Instead, it considered the possibility that the

16   state is the real party in interest in a PAGA claim, and specifically declined to resolve the issue

17   because it would not affect the outcome of that case. *Id.* at 1122−23. Further, the Ninth Circuit's

18   more recent decision in *Baumann* speaks to the issue more directly, holding that "[a] PAGA action

19   is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim

20   for class relief." *Baumann*, 747 F.3d at 1124. While neither *Urbino* nor *Baumann* is dispositive

21

22   [11] An unsuccessful PAGA claim does have a limited preclusive effect in that it is binding on the
     state enforcement agency, and therefore can serve to prevent other employees from filing a
23   separate PAGA claim to enforce the agency's enforcement interest. *See Iskanian*, 59 Cal. 4th at
     380−81; *Arias*, 46 Cal. 4th at 986. However, because the right implicated by this doctrine rests
24   with the agency rather than the employees, it is distinguishable from the preclusive effect of a
     class action. The federal False Claims Act includes similar prohibitions against serial *qui tam*
25   claims by different plaintiffs, at least in some circumstances. *See* 31 U.S.C. § 3730(b)(4) (barring
     private plaintiffs from bringing "a related action based on the facts underlying [a] pending
26   action"); *id.* § 3730(e)(4) (barring most actions "if substantially the same allegations or
     transactions as alleged in the action or claim were publicly disclosed . . . in a Federal . . . criminal,
27   civil, or administrative hearing"); *see also Kellogg Brown & Root Servs., Inc. v. United States ex
     rel. Carter*, 135 S. Ct. 1970, 1979 (2015) (declining to reach the issue of whether "the doctrine of
28   claim preclusion . . . protect[s] defendants if the first-filed [False Claims Act] action is decided on
     the merits").

1    of the issue here, the Ninth Circuit's description of PAGA claims in *Baumann* supports the

2    position of this and other courts that PAGA actions are not claims asserting the rights of third

3    party plaintiffs, and that the standing limits cited by Gate Gourmet therefore do not apply.

4         Gate Gourmet also argues that because PAGA is a procedural statute, the *Erie* doctrine

5    requires that Rule 23 govern the adjudication of representative claims in federal court.  *See Erie*

6    *R.R. Co. v. Tompkins*, 304 U.S. 64, 78−79 (1938) (establishing that federal courts are to apply

7    state substantive law and federal procedural law to diversity cases); Mot. at 21.  Most of the courts

8    holding that PAGA claims must satisfy Rule 23 rely on the preliminary determination that PAGA

9    is a procedural statute rather than one creating substantive rights.  *E.g., Ivey*, 2011 WL 3515936, at

10   *8−9; *Thompson*, 2010 WL 142537, at *5−6; *Adams*, 2009 WL 7401970, at *16.  Under a

11   procedural construction of PAGA, it follows that "'a plaintiff whose cause of action is perfectly

12   viable in state court under state law may nonetheless be foreclosed from litigating the same cause

13   of action in federal court, if he cannot' meet federal procedural and jurisdictional requirements,"

14   since federal courts must apply federal procedural rules in diversity cases.  *Thompson*, 2010 WL

15   6309364, at *2 (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001 (9th Cir. 2001).

16        Gate Gourmet relies on *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior*

17   *Court*, 46 Cal. 4th 993 (2009), to argue that PAGA is a procedural statute and does not create

18   substantive rights.  Mot. at 21.  However, *Amalgamated Transit* decided only whether PAGA is

19   "substantive" in the sense that it creates an individually assignable property interest.

20   *Amalgamated Transit*, 46 Cal. 4th at 1003.  Because the PAGA right of action was created to

21   "protect the public," the California Supreme Court declined to recognize that PAGA created an

22   alienable property right.  *Id.*

23        That PAGA is not "substantive" in that sense, however, does not mean the label

24   "substantive" is inapplicable for purposes of other legal doctrines.  *See Cunningham v. Leslie's*

25   *Poolmart, Inc.*, No. CV 13-2122 CAS, 2013 WL 3233211, at *6 (C.D. Cal. June 25, 2013).

26   Analogizing to *qui tam* actions, the court in *Cunningham* recognized that both PAGA and *qui tam*

27   actions provide a procedural mechanism that has been "characterized as a substantive right to

28   pursue a claim for relief."  *Id.* at *7 ("Since a plaintiff's right under PAGA to pursue a bounty

United States District Court
Northern District of California

29

United States District Court
Northern District of California

1 through a representative action is closely analogous to a qui tam relator's right . . . an aggrieved

2 employee's rights under PAGA should also be characterized as substantive.") (citing *Hughes*

3 *Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 948 (1997)).  A number of other federal courts

4 have held that PAGA's provisions creating representative claims for civil penalties are substantive

5 under *Erie* and therefore must be applied in federal court, unlike mere procedural state rules.

6 *Moua*, 2012 WL 370570, at *3; *Willner v. Manpower Inc.*, No. C 11-02846 JSW, 2012 WL

7 1570789, at *7−9 (N.D. Cal. May 3, 2012); *Cardenas v. McLane Foodservice, Inc.*, No. SACV

8 10-473 DOC, 2011 WL 379413, at *3 (C.D. Cal. Jan. 31, 2011); *Mendez*, 2010 WL 2650571, at

9 *3.  These courts have properly recognized that PAGA is "substantive" for the purposes of *Erie*

10 because it gives plaintiffs a "right to recover" in specified circumstances.  *Guaranty Trust Co. v.*

11 *York*, 326 U.S. 99, 109 (1945).

12        For the reasons set forth above, the Court holds that Achal does not need to plead the class

13 certification requirements of Rule 23 in order to proceed on his representative PAGA claims.  The

14 Court will follow the view of the majority of courts in this district in holding that because PAGA

15 claims are not class actions, and because these claims are law enforcement actions for the public

16 interest, there are no Article III, prudential standing, or *Erie* doctrine issues precluding Achal from

17 pursuing his representative non-class PAGA claims.  The Court therefore declines to dismiss

18 Claims Six through Seven of Achal's FAC on the ground that they are not pleaded in accordance

19 with Rule 23.

20              **2.  Sufficiency of the Pleadings under Federal Rule of Civil Procedure 8(a)**

21          a.  Failure to Furnish Accurate Wage Statements in Violation of Labor Code
                § 226(a)

22        As is relevant to Achal's claim, California Labor Code section 226(a) requires that every

23 employer furnish, at the time of each payment of wages, "an accurate itemized statement in

24 writing showing . . . (6) the inclusive period for which the employee is paid, and (7) the name of

25 the employee and only the last four digits of his or her social security number or an employee

26 identification number other than a social security number."  Cal. Lab. Code § 226(a).  A claim

27 against an employer for violating Labor Code section 226(a) requires a showing of three elements:

28

1   (1) a violation of the statute; (2) the violation was knowing and intentional; and (3) an injury

2   resulted from the violation.  Cal. Lab. Code § 226(e); *Willner*, 35 F. Supp. 3d at 1128.  Here, Gate

3   Gourmet argues that Achal's PAGA claims fail because he has not adequately pleaded the

4   elements of a section 226(a) violation, specifically as required by section 226(e).[12]  Mot. at 15.

5          The inclusive dates required by section 226(a)(6) refer to the start and end date of the pay

6   period and necessarily must include the start date in order to give substance to the word

7   "inclusive."  *Willner*, 35 F. Supp. 3d at 1129.  A failure to include the start date of the pay period

8   in a statement constitutes a violation of section 226(a)(6).  *McKenzie*, 765 F. Supp. 2d at 1229

9   (holding that the defendant "violated Labor Code Section 226(a)(6) by failing to include the

10  beginning date for the pay period in its wage statements").

11         To comply with section 226(a)(7), the text of the statute requires that an employer set forth

12  either (1) *only* the last four digits of employees' social security number *or* (2) an employer

13  identification number.  Cal. Lab. Code § 226(a)(7) (emphasis added).  The clear meaning of the

14  statute is to forbid employers from including the full social security number on wage statements.

15  Section 226(i), applicable only to governmental entities, makes it explicit that if a government

16  employer chooses to provide a wage statement, it "shall use no more than the last four digits of the

17  employee's social security number."  Further, the legislative history of section 226(a)(7) makes

18  clear that the inclusion of full social security information on a wage statement is a violation of the

19  Labor Code.  For privacy reasons, section 226(a)(7) was amended in 2004 to require that only the

20  last four digits, as opposed to the entire social security number, be included.  2004 Cal. Legis.

21  Serv. Ch. 860 (S.B. 1618).  The previous version of section 226(a)(7), effective from 2005 through

United States District Court
Northern District of California

---

22

23  [12] Some district court decisions have held that plaintiffs bringing PAGA claims need not satisfy
    the requirements of section 226(e) in that they need not allege the they have suffered any injury as
24  a result of an employer's alleged Labor Code violations, or that the employer's noncompliance
    was knowing and intentional.  *See, e.g.*, *McKenzie*, 765 F. Supp. 2d at 1232; *Willner*, 35 F. Supp.
25  3d at 1135.  Those cases rely primarily on section 2699.5 of the Labor Code, which lists a
    violation of "subdivision (a) of Section 226"—with no reference to paragraph (e) or any other
26  portion of section 226—as sufficient to support a PAGA claim.  *See McKenzie*, 765 F. Supp. 2d at
    1231−32 (citing Cal. Lab. Code § 2699.5).  However, at the hearing on July 10, 2015, Achal
27  stipulated to the requirement that he plead injury and scienter in accordance with section 226(e)
    for purposes of his PAGA claims.  The Court therefore assumes for the purpose of the present
28  motion that section 226(e) applies to Achal's PAGA claims.

2011, stated that wage statements must include "[the employee's] social security number, except that by January 1, 2008, only the last four digits of his or her social security number of an employee identification number other than a social security number may be shown."

Whether a violation was "knowing and intentional" is a question of fact. *Willner*, 35 F. Supp. 3d at 1131. This standard requires more than a violation of section 226(a) alone, and requires a showing that the employer knew that facts existed that brought its actions or omissions within the provisions of section 226(a). *Id.* at 1130–31. "Knowing and intentional" failure does not include "an isolated and unintentional payroll error due to a clerical or inadvertent mistake." Cal. Lab. Code § 226(e)(3). At the pleading stage, however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *Reinhardt v. Gemini Motor Transport*, 879 F. Supp. 2d 1138, 1142 (E.D. Cal. 2012). A simple allegation that an employer's failure to provide accurate wage statements was "knowing and intentional" suffices to state a claim under section 226. *Reinhardt*, 879 F. Supp. 2d at 1141.

An aggrieved employee is held to have suffered injury under section 226(a) if his employer fails to provide accurate and complete information as required by any one or more of items under sections 226(a)(1) to (9) and the employee cannot "promptly and easily determine" from the wage statement alone one or more of the following: "(i) the amount of gross or net wages paid or any other information required to be provided pursuant to items (2) to (4), (6), and (9); . . . (iii) the name and address of the employer; or (iv) the name of the employee and only the last four digits of his social security number or an employee identification number." Cal. Lab. Code § 226(e)(2)(B). Section 226(e) further defines "promptly and easily determine" as meaning "a reasonable person would be able to readily ascertain the information without reference to other documents or information." Cal. Lab. Code § 226(e)(2)(C). An employee is said to have suffered injury under section 226(a) where a wage statement fails to include the start date of a pay period as required by section 226(a)(7), and the employee must refer to outside sources to verify which days of work are included in her paycheck. *McKenzie*, 765 F. Supp. 2d at 1230 (employee suffered injury as she was required to refer to either a calendar, employer manual, or work schedule to verify days of work included in a wage statement missing a start date). Other injuries under

32

1    section 226(a) may be shown through the possibility of not being paid overtime, employee

2    confusion over whether they received all wages owed them, difficulty and expense involved in

3    reconstructing pay records, and forcing employees to make mathematical computations to analyze

4    whether the wages paid in fact compensated them for all the hours they worked. *Reinhardt*, 879 F.

5    Supp. 2d at 1142 (plaintiff adequately pleaded injury under section 226(a) where "the injury

6    described in the FAC [was] more than a simple identification of omitted information. . . . These

7    allegations indicate that there is need for both additional documentation and additional

8    mathematical calculations in order to determine whether Plaintiffs were correctly paid and what

9    they may be owed."); *but see Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1181

10   (C.D. Cal 2008) (while a technical violation of section 226, employee failed to state a claim for

11   relief where there was no evidence that plaintiff suffered injury due to employer's use of a slightly

12   truncated name on the wage statements it issued to plaintiff).

13      With respect to his PAGA failure to furnish claim, Achal alleges that Gate Gourmet has

14   failed to furnish him and other employees with accurate wage statements that state "(1) only the

15   last four digits of the employee's social security number and (2) the inclusive dates of the period

16   for which the employee is paid." FAC ¶ 16(a). Gate Gourmet misunderstands Achal's argument

17   as to section 226(a)(7). Achal alleges that Gate Gourmet violated that subsection by including his

18   *full* social security number, as opposed to *only* the last four digits. *Id.* at ¶ 56, Opp'n at 13. Gate

19   Gourmet instead responds to an argument not made by Achal—that Gate Gourmet violated section

20   226(a)(7) by failing to include either social security information or an employment identification

21   number.[13] Mot. at 14. Achal then alleges generally that this failure was done "intentionally and

22   willfully" and that as a result of this failure, "Achal and the current and other former employees

23   have been damaged." FAC ¶¶ 57−58. While not required to do so at the pleading stage, Achal

24   has included his final wage statement in Exhibits B and C to his FAC. Fed. R. Civ. P 10(c).

25   _____

26   [13] Gate Gourmet cites *Elliot*, 572 F. Supp. 2d 1169, to argue that employers do not violate the
     Labor Code where they either include an employee identification number or a social security

27   number. Reply at 8 n.5. However, *Elliott* held only that including an employee identification
     number is sufficient if there is no social security information at all, and did not address whether

28   inclusion of full social security information—as opposed to only the last four digits—in addition
     to an employee identification number is a violation. *Elliot*, 572 F. Supp. 2d at 1178−79.

United States District Court
Northern District of California

1   Achal also incorporated by reference several other wage statements included as part of his original

2   complaint, which he neglected to physically attach to his FAC.[14]

3       The Court finds that Claim Six of Achal's FAC, failure to furnish accurate wage

4   statements, states a claim for relief.  The Court is satisfied that Achal, by attaching and

5   incorporating the wage statements at issue to his FAC, has pleaded sufficient facts to support a

6   plausible inference that Gate Gourmet failed to furnish him and other Gate Gourmet employees

7   with accurate and complete wage statements as required by Labor Code sections 226(a)(6) and (7).

8   In support of his allegation that Gate Gourmet violated section 226(a), that the violation was

9   knowing and intentional, and that he has been injured as a result, Achal attached and incorporated

10  wage statements several of which are missing the start date of the pay period and include redacted

11  social security information.  Achal's general allegation that Gate Gourmet's noncompliance with

12  the Labor Code was both "intentional[] and willful[]" suffices to plead that Gate Gourmet's

13  violation was knowing and intentional.  FAC ¶ 57; *see Reinhardt*, 879 F. Supp. 2d at 1141.

14  Further, Achal's allegation is supported by the repeated nature of Gate Gourmet's omissions, as

15  documented in the attached wage statements, which supports a plausible inference that Gate

16  Gourmet's noncompliance goes beyond a mere typographical or otherwise inadvertent error.

17  These wage statements also support a claim that Achal could not promptly and easily determine

18  from the wage statements alone the start date of the pay periods.  As to the social security

19  information, while Achal cannot argue that he was injured in the sense that he cannot promptly

20  and easily determine the last four digits of his social security number from the full social security

21

22  ─────────────────────
    [14] Ordinarily only the contents of the complaint are considered in evaluating a Rule 12(b)(6)
23  motion to dismiss.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994).  Under
    the "incorporation by reference" doctrine, however, a court may also consider documents "whose
24  contents are alleged in a complaint and whose authenticity no party questions, but which are not
    physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994),
25  *overruled on other grounds*, *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  In
    his FAC, Achal refers to more than the one wage statement physically attached to his FAC.  FAC
26  ¶ 16; *See* FAC Exs. B and C.  Gate Gourmet recognizes this reference, and asks this Court to
    consider the several wage statements attached to Achal's original complaint.  Mot. at 15 n.5; Dkt.
27  7, Ex. A. The Court finds that the conditions for incorporation by reference apply and that these
    wage statements may be properly considered in resolving the Motion to Dismiss.  These wage
28  statements show that it is the "SSN" being redacted, rather than an employee identification
    number, and further lack the start dates of the pay periods.

United States District Court
Northern District of California

number, section 226(a) was amended later than section 226(e), and the Court assumes that the California legislature did not intend to render that amendment to section 226(a)(7) unenforceable. To the contrary, the injury contemplated by the amended statute is concerned less about an employee's ability to ascertain the information and more about the broader public policy against the unnecessary dissemination of employees' private, identifying information. Achal's allegations, in conjunction with the attached and incorporated wage statements, are sufficient to give fair notice to Gate Gourmet of the claims against it and the grounds upon which they rest. *Starr*, 652 F.3d at 1215 (quoting *Swierkiewicz*, 534 U.S. at 514−15). The Court finds that the allegations set forth in Claim Six of Achal's FAC satisfy the minimum pleading requirements set forth by *Iqbal* and *Twombly*, and therefore the Court denies Gate Gourmet's motion to dismiss with regards to Claim Six.

### b. Failure to Maintain Accurate Wage Statements in Violation of Labor Code § 226

California Labor Code section 226(a) also requires that "[t]he deductions made from payment of wages shall be recorded . . . and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years. " Cal. Lab. Code § 226(a). For the purpose of this section, copy "includes a duplicate . . . or a computer-generated record that accurately shows all the information required by [section 226(a)]." *Id.* Achal alleges that the computer-generated record kept by Gate Gourmet violated sections 226(a)(6) and (8), because it fails to state the inclusive dates of the period for which the employee is paid and the address of the legal entity who is the employer.[15] FAC ¶ 16. Again, a claim against an employer for violating Labor Code § 226(a) requires that Achal demonstrate (1) a violation of the statute; (2) the violation was knowing and intentional; and (3) an injury resulted from the violation. Cal. Lab. Code § 226(e); *Willner*, 35 F. Supp. 3d at 1128. What is required to satisfy the requirement that a wage statement state the "inclusive dates" of a pay period is set forth in the preceding section. Section 226(a)(8) requires that an employer include its name and address on the wage statement

---

[15] The computer-generated record to which Achal and Gate Gourmet refer is incorporated by reference into Achal's FAC, and is available in the record as an attachment to the original complaint. Dkt. 7, Ex. A.

1   itself; anything less fails to comply with section 226(a)(8). *McKenzie*, 765 F. Supp. 2d at 1129

2   (holding that an employer violated section 226(a)(8) by failing to include its address on its wage

3   statements even where employer included the address on the checks attached to the statements).

4        Achal alleges that Gate Gourmet failed to maintain for him and other employees a copy of

5   accurate and sufficient wage statements spanning back at least three years.  FAC ¶ 61.

6   Specifically, Achal alleges that the computer-generated record of his statements fails to state "the

7   address of the legal entity that is the employer" and fails to state "the inclusive dates of the period

8   for which the employee is paid for each pay period."  *Id.* at ¶ 16.  Achal then alleges generally that

9   this failure was done "intentionally and willfully" and that as a result of this failure, "Achal and

10  the current and other former employees have been damaged."  *Id.* at ¶¶ 62−63.

11       The Court dismisses Achal's failure-to-maintain claim against Gate Gourmet to the extent

12  that it is based on a failure to include the start dates of the pay periods on the record of his past

13  wage statements pursuant to section 226(a)(6), because the Court is satisfied that Achal can

14  promptly and easily determine the start dates from the attached record alone.  While not explicit,

15  the start dates of the pay periods are clear from the record furnished, where the consecutive pay

16  period end dates are listed in succession.  Dkt. 7, Ex. A.  Achal has alleged no further facts

17  suggesting that the record alone is insufficient to deduce the start dates of the pay periods.[16]

18       The Court is satisfied, however, that Achal has adequately alleged that Gate Gourmet

19  failed to maintain for him and other Gate Gourmet employees accurate and complete wage

20  statements as required by California Labor Code section 226(a)(8), and that he suffered injury as a

21  result.  By incorporating the record of his past wage statements provided to him by Gate Gourmet,

22

23  ─────────────────────────

    [16] As described in the preceding section, the relevant standard for statutory injury under section
24  226(e) is whether an employee can "promptly and easily determine from the wage statement
    alone" the information required by section 226(a).  As to the failure-to-furnish claim, the wage
25  statements that Gate Gourmet furnished show only the end date of that individual pay period,
    requiring an employee to look beyond the face of the wage statements alone to ascertain on which
26  dates the pay periods began.  As to the failure-to-maintain claim, however, the record of Achal's
    past wages show the end date of each payroll period in succession together in one document,
27  making it simple to infer the start date for any given period by looking at the end date of the prior
    period.  Because the Court finds that Achal can promptly and easily determine the start date of the
28  pay periods from the face of the record alone, and therefore has not pleaded injury, this alleged
    violation of 226(a) cannot serve as the basis of a failure-to-maintain claim.

which lack Gate Gourmet's address, Achal has pleaded sufficient facts to plausibly suggest that he was unable to promptly and easily determine Gate Gourmet's address from the record alone, as required by the Labor Code.  For the reasons set forth in the preceding section, Achal's general allegation that this failure was both "intentional[] and willful[]" suffices for purposes of this motion to plead a knowing and intentional violation.  FAC ¶ 62.  While it is conceivable that Gate Gourmet maintains other records in compliance with the statute, that is a question of fact not implicated at the pleading stage.  The Court therefore denies Gate Gourmet's motion to dismiss Claim Seven of Achal's FAC.

## IV.    PRAYER FOR RELIEF

Gate Gourmet also moves to dismiss Achal's prayer for punitive damages and injunctive and declaratory relief for his FEHA claims (Claims 1−5).

### A.    Punitive Damages

Punitive damages are available for violations of FEHA "where the defendant has been guilty of oppression, fraud, or malice."[17] Cal. Civ. Code § 3294(a); *Commodore Home Sys., Inc. v. Super. Ct.*, 32 Cal. 3d 211, 215 (1982).  As is the case here, where the defendant is a corporation, the "authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  Cal. Civ. Code § 3294(b).  In passing this section as written, "[t]he drafters' goals were to avoid imposing punitive damages on employers who were merely reckless and to distinguish ordinary respondeat superior from corporate liability for punitive damages."  *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 571 (1999).  Ratification by a corporate employer for purposes of punitive damages requires actual knowledge of the conduct and its outrageous nature.  *Taylor*, 58 F. Supp. 3d at 1107.  Whether a corporate employer has ratified an act may be established by any circumstantial or direct evidence demonstrating adoption

---

[17] The California Civil Code defines "malice" as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civil Code § 3294 (c)(1). "Oppression" is defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights."  *Id.* at § 3294(c)(2).  The statutory definition of "fraud" is "an intentional misrepresentation, deceit, or concealment or a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property of legal rights or otherwise causing injury."  *Id.* at § 3294(c)(3).

1   or approval of the employee's actions by the corporate agent, which may be inferred from a failure

2   by the employer to investigate an employee's acts once the employer has become aware of them.

3   *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 560, 622 (1989) (holding that despite

4   sufficiently pleading sexual harassment claim by a physician under FEHA, a plaintiff was required

5   to sufficiently plead that the hospital-employer ratified his acts in order to sufficiently plead prayer

6   for punitive damages against the hospital-employer).

7          "[B]y selecting the term 'managing agent,' and placing it in the same category as 'officer'

8   and 'director,' the Legislature intended to limit the class of employees whose exercise of

9   discretion could result in a corporate employer's liability for punitive damages." *White*, 21 Cal.

10  4th at 573.  Whether a supervisor is a managing agent under the California Civil Code "does not

11  necessarily hinge on their level in the corporate hierarchy," but rather, "the critical inquiry is the

12  degree of discretion the employees possess in making decisions that will ultimately determine

13  corporate policy." *Id.* at 1105; *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 661 (9th Cir.

14  1982).  Corporate policy for the purpose of punitive damages are those "general principles which

15  guide a corporation, or rules intended to be followed consistently," *Cruz v. HomeBase*, 83 Cal.

16  App. 4th 160, 167 (2000), and that "affect a substantial portion of the company and that are the

17  type likely to come to the attention of corporate leadership," *Roby v. McKesson Corp.*, 47 Cal. 4th

18  686, 714 (2009).  It is this sort of broad and high-level authority that justifies punishing an entire

19  corporation for an otherwise isolated act of malice, fraud, or oppression. *Id.* at 715.  Whether

20  employees exercise such authority is a fact-specific inquiry determined on a case-by-case basis.

21  *Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010).

22         Achal focuses his claim for punitive damages under FEHA on the actions of Brett

23  Appleberg, Appleberg's unnamed supervisor, and Paula Morales, in approving his termination.

24  FAC ¶¶ 13−14; Opp'n at 18−19.  Achal alleges that Brett Appleberg, who consults on and is

25  responsible for approving all of Gate Gourmet's employee terminations, issued him a termination

26  letter on October 6, 2014, in which he "accused Achal of willfully injuring himself and making a

27  fraudulent claim for benefits" after Gate Gourmet purportedly performed an extensive review and

28  investigation.  FAC ¶ 13.  Achal further alleges that this conclusion was not reached by Gate

United States District Court
Northern District of California

38

Gourmet's workers' compensation carrier, and that Appleberg later admitted before an administrative law judge that Gate Gourmet had not actually conducted any independent investigation into the circumstances of his fall or nature and extent of his injuries. *Id.* Achal then alleges that his termination and the "false accusations of fraud leveled against him were reviewed and/or approved by Appleberg, Appleberg's direct supervisor, and regional workers' compensation manager Paula Morales." *Id.* at ¶ 14. According to Achal, this was a false and pretextual reason, and his termination was actually due to his disability and religious needs. *Id.*

While the Court is satisfied that Achal has pleaded sufficient factual allegations, taken as true, that could constitute malice, fraud, or oppression,[18] Achal has failed to allege sufficient facts from which the Court can infer that these acts were ratified by an officer, director, or managing agent of Gate Gourmet, as required to state a claim for punitive damages. Brett Appleberg, Appleberg's unnamed direct supervisor, and Paula Morales are the only employees of Gate Gourmet alleged to have been involved in bringing about Achal's termination. FAC ¶¶ 8−14. Based on the pleadings, it is essentially undisputed that none of the three employees are officers or directors of Gate Gourmet. The only allegation made by Achal to support his contention that one of the three employees is a managing agent of Gate Gourmet is Achal's allegation that Brett Appleberg "consults on and is responsible for approving all of Gate Gourmet's employee terminations." *Id.* at ¶ 13. Even taken as true, the Court is not satisfied that this description sufficiently pleads that Appleberg is a managing agent of Gate Gourmet. California courts have held that supervisors who have no discretionary authority over decisions that ultimately determine company policy are not considered managing agents even though they may be able to hire or fire other employees. *White*, 21 Cal. 4th at 577 ("[A supervisor's] supervision of plaintiff and her ability to fire him alone were insufficient to make her a managing agent."). Achal alleges no facts

---

[18] Taken in the light most favorable to Achal, the Court finds that the factual allegations set forth—particularly the allegation that various Gate Gourmet employees knowingly approved the termination of Achal on the basis of a false and pretextual reason, thereby intentionally violating Achal's right to work free from discrimination—plausibly suggest an act meeting the statutory definition of "fraud" under California Civil Code section 3294(c) for purposes of punitive damages.

United States District Court
Northern District of California

1    suggesting that Brett Appleberg's authority over Gate Gourmet's employee terminations rises to

2    the level of affecting corporate policy in such a way as to "affect a substantial portion of the

3    company and that are the type likely to come to the attention of corporate leadership." *Roby*, 47

4    Cal. 4th at 714.

5         The law does not impute every employee's malice, fraud, or oppression to a corporation.

6    *Cruz*, 83 Cal. App. 4th at 167.  Instead, punitive damages require proof of ratification of such an

7    act among corporate leaders, who are the corporation's officers, directors, or managing agents.  *Id.*

8    To equate mere supervisory status with managing agent status would be to create a rule defeating

9    the Legislature's intent, and would make corporate employers liable for punitive damages in most

10   employment cases.  *White*, 21 Cal. 4th at 575.  The Court finds that Achal has failed to include any

11   allegation that plausibly suggests that Appleberg, Appleberg's supervisor, or Morales exercised, or

12   had the ability to exercise, substantial discretionary authority over decisions that ultimately

13   determined corporate policy in some aspect of Gate Gourmet's business.  The Court therefore

14   dismisses Achal's prayer for punitive damages with leave to amend if Achal is aware of any facts

15   that plausibly suggest corporate ratification.

16        **B.    Injunctive Relief**

17        Achal seeks injunctive relief under California Government Code section 12965(c), which

18   allows courts to grant "any relief a court is empowered to grant in a civil action" which "may

19   include a requirement that the employer conduct training for all employees, supervisors, and

20   management on the requirements of [FEHA], the rights and remedies of those who allege a

21   violation of this part, and the employer's internal grievance procedures."  Cal. Gov't Code

22   § 12965(c); FAC Prayer for Relief ¶ 3.  Besides an Order requiring Gate Gourmet to conduct

23   training as set forth by statute, Achal also seeks a cease-and-desist letter requiring Gate Gourmet

24   to halt its discriminatory practices, an Order requiring that Gate Gourmet develop and implement a

25   policy for reasonably accommodating its employees, and an Order requiring that Gate Gourmet

26   develop and implement an internal grievance procedure for employee complaints regarding

27   discrimination, failure to make reasonable accommodations, and failure to engage employees in

28   the interactive process.  FAC Prayer for Relief ¶ 3.  Gate Gourmet opposes Achal's request for

40

United States District Court
Northern District of California

injunctive relief on the grounds that Achal lacks standing to seek this relief.  Mot. at 24−25.

According to Gate Gourmet, because Achal is a former employee of Gate Gourmet and does not

intend to return to work there, he cannot demonstrate a real or imminent threat of injury by the

continuation of Gate Gourmet's current employment practices.  *Id.*

While a court may grant injunctive relief in FEHA cases where appropriate to halt

discriminatory practices, *Harris*, 56 Cal. 4th at 234, a plaintiff in federal court must demonstrate

standing separately for each form of relief sought.  *Friends of the Earth, Inc. v. Laidlaw Envtl.*

*Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).  In federal court, the constitutional requirement that

a plaintiff have standing is equally applicable to state law claims.  *See Qwest Corp. v. City of*

*Surprise*, 434 F.3d 1176, 1180 (9th Cir. 2006); *Hangarter v. Provident Life & Accident Ins. Co.*,

373 F.3d 998, 1021−22 (9th Cir. 2004) (reversing district court's conclusion that plaintiff had

standing to pursue injunctive relief under state law).  Standing requires that "(1) the plaintiff

suffered an injury in fact, i.e. one that is sufficiently 'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged

conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'"  *Bates v. United*

*Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560−61 (1992)).  For a plaintiff seeking injunctive relief, for standing to exist, the plaintiff

"must demonstrate that he has suffered or is threatened with a particularized legal harm coupled

with a sufficient likelihood that he will again be wronged in a similar way."  *Bates*, 511 F.3d at

985.  In other words, standing requires that a plaintiff establish a "real and immediate threat of

repeated injury."  *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550, 562 (S.D. Cal. 2013).

Achal makes only one argument responding to Gate Gourmet's assertion that he lacks

standing to seek injunctive relief.[19]  Achal cites only *E.E.O.C. v. Dry Goods Corp.*, 449 U.S. 590

(1981) to argue that plaintiffs bringing claims under FEHA are like private attorneys general,

stepping into the shoes of the DFEH, which maintains a cognizable role in banning discrimination

---

[19] Achal's other arguments regarding injunctive relief center on the purpose of FEHA—to
eliminate and prevent discrimination in the workplace—and the fact that FEHA itself allows a
court to issue injunctive relief.  Opp'n at 19.  These arguments, however, are not responsive to the
issue of Article III standing.

regardless of whether the charging party himself is no longer at risk of injury.  Opp'n at 19.

However, the Court in *Dry Goods* did not discuss Article III standing for injunctive relief.  That

case stands only for the proposition that charging parties under Title VII are not considered

members of the "public" to whom disclosure of confidential information acquired during agency

proceedings and investigations is illegal.  *Dry Goods*, 449 U.S. at 590.  In so holding, the Court

explained that because Congress considered a charging party under Title VII to be a private

attorney general "whose role in enforcing the ban on discrimination is parallel to that of the

[EEOC] itself," charging parties must be able to access the requisite information in order "to

assess the feasibility of litigation."  *Id.* at 602.  The Court did not hold, however, that a charging

party actually takes on the role of the EEOC.  To the contrary, the Ninth Circuit has held that a

former employee lacks standing to seek injunctive relief on an employment discrimination

claim—at least where he or she is not seeking reinstatement—because the former employee

"would not likely benefit" from any such relief.  *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d

1033, 1037 (9th Cir. 2006) (considering a federal Americans with Disabilities Act claim).

The Court finds that Achal does not have standing to pursue injunctive relief against Gate

Gourmet.  Achal does not dispute that he is no longer employed by Gate Gourmet.  *See* FAC ¶

13−14.  Further, because he alleges no facts indicating that he intends to return to work for Gate

Gourmet in the future, Achal's allegations do not establish any threat of real and immediate future

harm to Achal himself as a result of Gate Gourmet's employment practices should the Court not

grant the injunctive relief he requests.  The fact that FEHA allows a court to order injunctive relief

does not alter the standing analysis.  Because Achal has not alleged facts establishing a sufficient

likelihood that he will again be wronged by Gate Gourmet's allegedly improper employment

practices, he lacks standing to sue for injunctive relief from which he would not likely benefit.

The Court therefore dismisses Achal's prayer for injunctive relief with leave to amend if Achal is

aware of facts sufficient to establish that he faces a real and immediate threat of future injury.

### C.    Declaratory Relief

Gate Gourmet moves to dismiss Achal's prayer for declaratory relief as to his legal rights

and obligations with respect to his FEHA claims on the ground that a determination on these

United States District Court
Northern District of California

United States District Court
Northern District of California

1    claims would be entirely "unnecessary and redundant," because these claims are to be addressed

2    by the substantive relief sought.  Mot. at 25.  In his Opposition, Achal does not present any

3    arguments specific to his prayer for declaratory relief to refute Gate Gourmet's argument.

4         A claim for declaratory relief is unnecessary where an adequate remedy exists under some

5    other cause of action.  *Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 708 (N.D. Cal. 2009);

6    *StreamCast Networks, Inc. v. IBIS LLC,* No. C 05-04239, 2006 WL 5720345, at *4–5 (C.D. Cal.

7    May 2, 2006).  Declaratory relief should be denied when it will neither clarify or settle the legal

8    relations in issue nor terminate the proceedings and afford relief from the uncertainty and

9    controversy that the parties face.  *United States v. Washington*, 759 F.2d 1353, 1356−57 (9th. Cir.

10   1985).  Further, "[t]he purpose of a judicial declaration of rights . . . is to enable parties to shape

11   their conduct so as to avoid a breach. . . . [I]n short, the remedy is to be used in the interests of

12   preventative justice, to declare rights rather than execute them."  *Babb v. Superior Court,* 3 Cal. 3d

13   841, 848 (1971) (internal quotations omitted).

14        Here, Achal seeks general declaratory relief associated with his FEHA causes of action.

15   FAC Prayer for Relief ¶ 3.  Upon review of Achal's other causes of action, the Court finds that the

16   declaratory relief Achal seeks is commensurate with the relief sought through his substantive

17   claims.  Because Achal's prayer for declaratory relief if duplicative and unnecessary, the Court

18   dismisses Achal's prayer for declaratory relief.

19   **V.    CONCLUSION**

20        For the reasons stated above, Gate Gourmet's Motion is GRANTED as to Achal's requests

21   for punitive damages and injunctive and declaratory relief, which are dismissed with leave to

22   amend.  If Achal is aware of facts supporting those requests, and wishes to file an amended

23   complaint, he may do so no later than August 4, 2015.  Achal may not make any amendments

24   other than the addition of allegations to cure the pleading defects described above, absent

25   permission of the Court.  Gate Gourmet's Motion is DENIED as to the remainder of Achal's

26   / / /

27   / / /

28   / / /

claims, except that Claim Seven is DISMISSED to the extent that it relies on an alleged violation of California Labor Code section 226(a)(6).

**IT IS SO ORDERED.**

Dated: July 14, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California